UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:16-cv-866

| | |
|---|---|
| **PAULA M. ROBINSON,** ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| **NANCY A. BERRYHILL, Acting** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| Defendant. ) | |

**THIS MATTER** is before the Court upon Plaintiff's Motion for Summary Judgment (Doc. No. 6) and Commissioner's Motion for Summary Judgment (Doc. No. 9). Having carefully considered the motions and reviewed the record, the court enters the following findings, conclusions, and Order.

## I. Administrative History

Plaintiff Paula M. Robinson ("Robinson" or "Plaintiff") filed her application for Disability Insurance Benefits on July 21, 2011, alleging a disability onset date of April 24, 2008. After Plaintiff's claim was denied both initially and on reconsideration, she requested and was granted a hearing. An administrative law judge held a hearing and denied her claim on September 13, 2013. Plaintiff appealed to the Appeals Council, and the Appeals Council vacated the decision and remanded the case for a new hearing and decision.

On April 9, 2015, a second hearing was held before Administrative Law Judge Clinton C. Hicks ("the ALJ"). At the hearing, Plaintiff amended her alleged onset date to October 18, 2013.

1

On June 8, 2015, the ALJ issued a decision finding that the Plaintiff was not disabled under the Act during the relevant time period.

The Appeals Council subsequently denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner of Social Security ("Commissioner"). Thereafter, Plaintiff timely filed this action, seeking judicial review of the ALJ's decision.

## II. Factual Background

In his decision, the ALJ at the first step determined that Plaintiff did not engage in substantial gainful activity during the period between her alleged onset date and her date last insured. (Tr. 17). At the second step, the ALJ concluded that Plaintiff has the following severe impairments: obesity, degenerative disc disease, memory dysfunction, sleep apnea with excessive daytime hypersomnolence, depression, and bipolar disorder. (*Id.*). At the third step, the ALJ found that the Plaintiff did not have an impairment or combination of impairments that meet or medically equal the severity of one the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (Tr. 18).

After a consideration of the entire record, the ALJ then found that Plaintiff has the residual functional capacity ("RFC") to perform sedentary work with the following limitations:

> she must have the option to change position from sitting to standing twice per hour; she cannot climb ladders, ropes, or scaffolds; she can occasionally climb ramps and stairs; she cannot perform overhead lifting with the left upper extremity; she is limited to simple, routine, repetitive tasks in a nonproduction work environment with no public contact and occasional interaction with supervisors and coworkers.

(Tr. 20). Based on these limitations, the ALJ found in the fourth step that Plaintiff is not capable of performing her past relevant work. (Tr. 25). Finally, at the fifth step, the ALJ concluded that there are other jobs that exist in significant numbers in the national economy that Plaintiff could

2

perform. (Tr. 26). Accordingly, the ALJ found that Plaintiff was not disabled under the Act. (Tr. 27).

### III. Standard of Review

The only issues on review are whether the Commissioner applied the correct legal standards and whether the Commissioner's decision is supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Review by a federal court is not de novo, *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); rather, inquiry is limited to whether there was "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson*, 402 U.S. at 400. Even if the undersigned were to find that a preponderance of the evidence weighed against the Commissioner's decision, the Commissioner's decision would have to be affirmed if supported by substantial evidence. *Hays*, 907 F.2d at 1456.

### IV. Discussion

On appeal, Plaintiff asserts that remand is warranted, alleging three errors by the ALJ: (1) that he did not conduct a full function-by-function analysis of Plaintiff's nonexertional mental limitations, (2) that he accepted testimony from a vocational expert that conflicts with the DOT but failed to resolve the conflict, and (3) that he failed to properly evaluate opinion testimony and give it proper weight in the RFC determination. After reviewing both parties' memoranda, the ALJ's decision, the administrative record, and relevant case law, the Court finds that the ALJ's decision must be affirmed.

**A) Mental Limitations**

Plaintiff alleges error with respect to each of the three areas of mental functioning assessed by the ALJ. Each will be discussed in turn.

**i) Concentration, Persistence, and Pace**

First, Plaintiff claims that the ALJ failed to analyze her ability to stay on task, in violation of the Fourth Circuit's ruling in *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015).

The Fourth Circuit in *Mascio* held that "[a]n ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" *Id.* at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011)). If the limitation in concentration, persistence, and pace does not actually translate into a limitation in RFC, the ALJ may limit the claimant to merely simple, routine tasks or unskilled work, but must explain why a further limitation is not needed. *Id.* But if the limitation does impact the claimant's RFC, then the ALJ must go further and include a limitation that reflects the claimant's "ability to stay on task." *Id.*; *see also Grant v. Colvin*, No. 1:15CV00515, 2016 WL 4007606, at *9 (M.D.N.C. July 26, 2016) ("[W]hen an ALJ finds moderate limitation in CPP, the ALJ must <u>either</u> adopt a restriction that addresses the 'staying on task' aspect of CPP-related deficits . . . <u>or</u> explain why the CPP limitation of that particular claimant did not necessitate a further restriction regarding 'staying on task.'").

Here, the ALJ found that Plaintiff had a moderate limitation in concentration, persistence, and pace. (Tr. 19). And the ALJ found that this limitation impacted Plaintiff's RFC. Accordingly, the ALJ provided an additional "accommodation for a non-production work-environment with no public contact and only occasional interaction with supervisors and coworkers" in her RFC. (Tr. 25). Many courts in this district have previously found that these limitations—if supported by the medical record—sufficiently account for a moderate limitation in concentration, persistence, and pace. *See Gordon v. Berryhill*, No. 3:16-cv-130, 2017 WL 5759940, at *2 (W.D.N.C. Nov. 28, 2017); *Linares v. Colvin*, No. 5:14-cv-120, 2015 WL

4389533, at *4 (W.D.N.C. July 17, 2015); *Horning v. Colvin*, No. 3:14-cv-722, 2016 WL 1123103, at *4 (W.D.N.C. Mar. 21, 2016); *White v. Colvin*, No. 1:14-cv-161, 2016 WL 1600313 (W.D.N.C. Apr. 21, 2016).

Thus, the ALJ adequately accounted for Plaintiff's moderate limitation in concentration, persistence, and pace.

### ii) Social Functioning

Second, Plaintiff contends that the ALJ failed to fully explain his social functioning analysis and findings as required by SR 96-8p. Specifically, the ALJ found that Plaintiff can have "no public contact and occasional interaction with supervisors and coworkers." (Tr. 20). Plaintiff argues that the ALJ erred by not explaining whether "interaction" means "face-to-face, in the same room, in the same area, on the telephone, via email, [or] via text." (Pl.'s Mem., 10).

The only authority Plaintiff cites in support of this argument is a quote from *Patterson v. Comm'r of Soc. Sec. Admin.*, 846 F.3d 656 (4th Cir. 2017), taken out of context, merely to assert that the directive to ALJs is to "Show your work." *Id.* at 663. However, in that case, the ALJ "did not address conflicting evidence," did not "explain away contrary findings of other doctors in a comprehensive manner," "did not rate Patterson's four areas of functional limitation," and did not "explain how he reached his conclusions about the severity of the mental impairment." *Id.* at 662. Accordingly, the Fourth Circuit was left without the explanation needed to evaluate the ALJ's conclusions.

Here, by contrast, Plaintiff merely seizes upon the word "interaction." Several courts have rejected the argument there is any ambiguity in this word that requires additional explanation. *See Spurlock v. Berryhill*, 1:17CV411, 2018 WL 791302, at *12 (M.D.N.C. Feb. 8, 2018) ("Plaintiff has not shown why the term 'interaction' warrants explanation beyond its

common, every day meaning."); *Watts v. Berryhill*, 3:16-cv-850, 2017 WL 6001639, at *4 (W.D.N.C. Dec. 4, 2017) ("The meaning of interpersonal interaction is not ambiguous: it covers all communication between people."); *Dalton v. Berryhill*, 1:17-cv-20, 2017 WL 4819280, at *4 (W.D.N.C. Oct. 25, 2017) ("Indeed, the court finds no legal authority for the proposition that the ALJ must do more than explain and discuss plaintiff's ability to interact with others, or that there is some legal duty for the ALJ to articulate limitations on every conceivable way on how 'interaction' can take place."). This Court agrees that the word "interaction" is not ambiguous.

Thus, this Court finds that the ALJ adequately explained how Plaintiff's limitations in social functioning impact her RFC and ability to work.

### iii) Activities of Daily Living

Third, Plaintiff argues that the ALJ failed to discuss the effect that Plaintiff's limitations in her activities of daily living have on her ability to engage in work activity on a sustained basis. Plaintiff again relies on *Mascio* to argue that the ALJ failed to adequately provide a detailed assessment of the effect of Plaintiff's limitations on activities of daily living on her ability to engage in work activities.

In step three, the ALJ found that Plaintiff had only a mild limitation in her activities of daily living. (Tr. 19). And in assessing Plaintiff's RFC, the ALJ discussed at length Plaintiff's reported activities of daily living as well as evidence of her activities from other sources. (Tr. 21). The ALJ ultimately concluded that her "activities suggest that [Plaintiff] is significantly more active than alleged" and thus "are not aligned with a finding of disability." (Tr. 24).

Thus, the ALJ adequately considered the evidence of Plaintiff's limitations in activities of daily living in evaluating her RFC and assessing her allegations of disability. 20 C.F.R. §§ 404.1529(c)(3), (d)(4).

**B) Vocational Expert Testimony**

Plaintiff next argues that the ALJ improperly relied on the testimony of the Vocational Expert ("VE") because there was an apparent conflict between the testimony of the VE and the Dictionary of Occupational Titles ("DOT").

It is the duty of an ALJ to ask a vocational witness whether or not his or her testimony regarding occupational evidence is consistent with the information supplied by the DOT. SSR 00-4p. The ALJ must also review the testimony and the DOT independently to determine if there are any conflicts. *Pearson v. Colvin*, 810 F.3d 204, 209 (4th Cir. 2015). If there is an apparent conflict, the ALJ must identify and resolve it. *Id.* An "apparent conflict" is an instance where "the expert's testimony seems to, but does not necessarily, conflict with the [DOT]." *Id.*

Here, Plaintiff argues that her RFC limitation that "she cannot perform overhead lifting with the left upper extremity" creates an apparent conflict with the DOT requirements for the potential jobs the VE testified she could perform. Those positions all require the ability to frequently reach. *Marker*, DICOT 209.587-034, 1991 WL 671802; *Electronics Worker*, DICOT 726.687-010, 1991 WL 679633; *Inspector and Hand Packager*, DICOT 559.687-074, 1991 WL 683797.

Plaintiff provides no authority for the argument that a limitation in lifting creates a conflict with a position that requires reaching. Nonetheless, Plaintiff argues that overhead lifting is the same as overhead reaching. Lifting is defined, for purposes of the DOT, as "Raising or lowering an object from one level to another (includes upward pulling)." Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, Appendix C, at C-1 (Dep't of Labor 1993). Reaching is defined as "Extending hand(s) and arm(s) in any direction." *Id.* at C-3. The two tasks are clearly distinguished under the DOT.

7

*Blake v. Astrue*, No. 2:10-984-BHH, 2011 WL 4345829, at *4 n.2 (D.S.C. Sep. 16, 2011) (finding that reaching and lifting are different tasks).

Further, in *Pearson*, the case Plaintiff relies on to support this claim, the RFC specifically mentioned a limitation in both overhead reaching and lifting. 810 F.3d at 206. Conflating the two actions, as Plaintiff seeks to do, would render the additional limitations in that case and many others completely redundant, and would cast doubt on any RFC that limits one but not the other. *See, e.g.*, *Griffey v. Berryhill*, No. 1:16-cv-257, 2017 WL 1954536, at *2 (W.D.N.C. May 10, 2017) (finding a limitation in both overhead reaching and overhead lifting); *Nichols v. Colvin*, 100 F. Supp. 3d 487, 493 (E.D. Va. 2015) (same). And while the ALJ's decision to limit Plaintiff's ability to lift overhead was grounded in the medical record, Plaintiff has not shown any evidence from the record supporting a limitation in overhead reaching. *See Tennant v. Berryhill*, No. 3:16-cv-48-FDW, 2017 WL 1028594, at *3 (W.D.N.C Mar. 16, 2017) ("The fact that there is no specific mention of the limitations to 'reaching' indicates that the evidence did not support such a limitation. However, the evidence supported the limitation to overhead lifting, and thus, it was included in the RFC.").

Thus, the ALJ did not fail to address an apparent conflict between the testimony of the VE and the information in the DOT because no such conflict existed.

**C) Opinion Testimony**

Plaintiff also raises three alleged errors with the ALJ's evaluation of opinion testimony. Each will be discussed in turn.

   **i) Medical Consultant at Reconsideration Level**

Plaintiff first argues that the ALJ failed to include certain limitations in the RFC that the medical consultant found. Specifically, Plaintiff argues that the ALJ did not include a limitation

8

on Plaintiff's ability to complete a normal workday and workweek without interruptions or her ability to perform at a consistent pace without an unreasonable number and length of rest periods.

Plaintiff draws these conclusions from the RFC Assessment Form completed by Dr. Daniel Nelson. However, the RFC Assessment Form specifically states that the answers to the questions on the form are evidence that help determine an RFC, while the actual RFC recommendation is included in the "narrative discussion" section. (Tr. 119). Dr. Nelson relied on his answers to determine that Plaintiff is able to maintain concentration, persistence, and pace "for the performance of simple tasks." (Tr. 120). And Dr. Nelson ultimately formed a conclusion that Plaintiff is capable of simple, routine, repetitive tasks in a low stress environment with limited social interaction. (Tr. 121).

The ALJ, in turn, gave "significant weight" to Dr. Nelson's opinion. (Tr. 25). The ALJ adequately addressed these specific recommendations and accommodated Plaintiff to "simple, routine, repetitive tasks in a nonproduction work environment with no public contact and occasional interaction with supervisors and coworkers." (*Id.*, Tr. 20).

Thus, the ALJ did not err in evaluating the opinion of Dr. Nelson.

**ii) State Agency Psychologist at Initial Level**

Plaintiff also argues that the ALJ erred by failing to evaluate the opinion of the State Agency Psychologist at the initial level, Sharon J. Skoll, PhD.

An ALJ has a duty to evaluate every medical opinion on the record. 20 C.F.R. § 404.1527(c) ("Regardless of its source, we will evaluate every medical opinion we receive."). The Commissioner concedes that the ALJ's failure to discuss the opinion of Dr. Skoll was error but argues that the error was harmless. (Def.'s Mem., 16).

9

"In order to merit remand or reversal, an ALJ's error must cause harm, and not just a possibility of prejudice." *Keaton v. Colvin*, No. 3:15cv588, 2017 WL 875477, at *4 (E.D. Va. Mar. 3, 2017) (internal citations omitted). "The party alleging harmfulness of an error 'carries the burden of showing that prejudice resulted.'" *Id.* (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)). An error is not harmless if it frustrates meaningful review, *Mascio*, 780 F.3d at 636, or implicates the validity of the ALJ's conclusions, *Patterson*, 846 F.3d at 662.

Here, Plaintiff has not shown that the ALJ's failure to evaluate Dr. Skoll's opinion evidence caused prejudice. Dr. Skoll concluded that Plaintiff is capable of performing simple, routine, repetitive tasks in a low stress environment with limited social interaction. (Tr. 104). This is the exact same conclusion that Dr. Nelson reached on reconsideration. (Tr. 121). The ALJ gave "significant weight" to the findings of Dr. Nelson and incorporated all of those recommendations into his RFC: "hence the accommodation for a non-production work environment with no public contact and only occasional interaction with supervisors and coworkers." (Tr. 25).

Thus, the ALJ's error is harmless because even if he had evaluated and adopted Dr. Skoll's opinions completely, there would be no difference in Plaintiff's RFC.

### iii) Questionnaire from Plaintiff's Husband

Plaintiff's final argument is that the ALJ erred by assigning "little weight" to the opinion of her husband, Mr. Robinson.

An ALJ may consider evidence from non-medical sources, including spouses. 20 C.F.R. § 404.1513(a)(4). Opinions from non-medical sources are evaluated using the same factors as for an evaluating medical source, but "not every factor for weighing opinion evidence will apply

in every case." 20 C.F.R. § 404.1527(f)(1). Thus, an evaluation of an opinion from a non-medical source "depends on the particular facts in each case." *Id.*

It is impermissible to discredit the observations of a claimant's family members "solely because of inherent familial bias." *Morgan v. Barnhart*, 142 F. App'x 716, 724 (4th Cir. 2005). However, when evaluating opinions of "spouses, parents, friends, and neighbors," the ALJ should consider "the nature and extent of the relationship" between a claimant and the third party, "whether the evidence is consistent with other evidence," and "any other factors that tend to support or refute the evidence." SSR 06-03p.

Here, the ALJ took Mr. Robinson's questionnaire answers into account in assessing Plaintiff's activities of daily living, social functioning, and concentration, persistence, and pace. (Tr. 19). However, the ALJ ultimately assigned little weight to Mr. Robinson's conclusions because of his "risk of bias" and because "his opinion is not fully supported by the objective medical evidence of record." (Tr. 25). As in *Morgan*, the ALJ did not make his credibility determination "solely" on the basis of familial bias. *See* 142 F. App'x at 724; *see also Able v. Colvin*, 2016 WL 1229086, at *7 (M.D.N.C. Mar. 28, 2016). Rather, the ALJ properly assessed Mr. Robinson's opinion in light of his relationship to Plaintiff and the opinion's support in the rest of the record.

## V. Conclusion

For the foregoing reasons, the Court finds that the ALJ followed proper legal standards and that his decision is supported by substantial evidence.

Accordingly, Plaintiff's Motion for Summary Judgment (Doc. No. 6) is **DENIED**, the Commissioner's Motion for Summary Judgment (Doc. No. 9) is **GRANTED**, and the decision of the Commissioner that Plaintiff was not disabled within the meaning of the Act is **AFFIRMED**.

**SO ORDERED**.

Signed: April 9, 2018

Graham C. Mullen
United States District Judge